IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| IN RE: ) | |
| ) | **Chapter 7** |
| **BRANDON M. CHASEN, SR.** ) | |
| ) | **Case No. 25-15437-NVA** |
| Debtor. ) | |
| _____ ) | |

### CHAPTER 7 TRUSTEE'S APPLICATION FOR AUTHORITY TO JOINTLY RETAIN AND COMPENSATE ROBERT L. PATRICK AND SC&H GROUP, INC. AS FINANCIAL ADVISORS

Zvi Guttman, Chapter 7 Trustee (the "Trustee") in the above-captioned case, hereby applies to the Court for entry of an Order authorizing the Trustee to **jointly** retain[1] and compensate Robert L. Patrick and SC&H Group, Inc. (collectively, "SC&H"), as financial advisors, pursuant to Section 327(c) of Title 11 of the United States Code (the "Bankruptcy Code"). In support of his application, the Trustee respectfully represents as follows:

### Background

1. This case was commenced by the filing of an involuntary petition for relief under Chapter 7 of the Bankruptcy Code on June 16, 2025. On July 11, 2025, the Debtor Brandon M. Chasen, Sr. (the "Debtor" or "Mr. Chasen") filed a Motion to Convert Involuntary Chapter 7 to Voluntary Chapter 7 [Dkt. 2]. That Motion was granted on July 29, 2025 [Dkt. 29] and Zvi Guttman was appointed as the Chapter 7 Trustee ("Guttman").

2. Prior thereto, on March 19, 2025, a related involuntary case was filed against Chasen Construction, LLC (sometimes hereinafter referred to as the "Chasen Construction Debtor" under Chapter 11 of the Bankruptcy Code (Case No.: 25-12356-NVA). It is uncontested that Mr. Chasen owns a majority of the membership interests of the Chasen Construction Debtor. Roger Schlossberg was appointed as the Chapter 11 trustee in that case ("Schlossberg").

---

[1] SC&H has already been retained by Roger Schlossberg, the Chapter 11 Trustee in the case of Chasen Construction, LLC.

3. Brandon Chasen, the Debtor in this case, was the majority owner and managing member of debtor Chasen Construction, and more than 6 dozen other entities. See Schedule A/B. These 70+ affiliated entities operated in tandem over a period of years. Their books and records were maintained in an inextricably intertwined basis, and their financial affairs are similarly inextricably intertwined through a complex web of intercompany transfers and shared transactions.

4. By his Application for Authority to Employ Financial Advisors [Chasen Constr. Dkt. 65] Schlossberg alleged that, "In order to perform his duties as Trustee herein, including that broad-ranging investigation of the Debtor and its pre-Petition activities contemplated by the Trustee, the Applicant requires the provision of financial advisory services[2] as follows:

* * *

> • To assist the Trustee in the conduct of a forensic investigation into the movement of cash and other assets between the Debtor, any insider, non-insider, or third-party entities;
>
> • To assist the Trustee with a review of the Debtor's previously filed federal and state tax returns;
>
> • To assist the Trustee with preparation of any required federal and state tax returns;
>
> • To assist the Trustee with a review of the Debtor's financial statements previously prepared by any outside accountants or accounting firms;
>
> • To assist the Trustee with the development and execution of strategies and approaches with respect to insider and non-insider entities;
>
> • To assist the Trustee with the evaluation and analysis of potential litigation and subsequent prosecution of the same

---

[2] The services SC&H will provide to Schlossberg by SC&H are broader than the services to be provided to Guttman. See Footnote 4.

including, but not limited to, avoidance actions under Chapter 5 of the Bankruptcy Code;

\* \* \*

• To assist the Trustee in the analysis of creditor claims, including assistance with development of databases, as necessary, to track such claims, and including where appropriate to assist in the preparation and prosecution of appropriate objections to claims;

• To assist the Trustee in the maintenance of the books and records of the Trustee and the bankruptcy estate, as necessary; and

• To assist the Trustee with such other services as the Trustee may deem necessary or desirable as consistent with the role of a financial advisor …

Application at ¶ 2.

## **The Need for a Shared Forensic Accountant**

5.  The Chasen Construction Debtor, its 70+ affiliates, and Brandon Chasen operated with a high degree of financial interrelationship, maintained shared books and records and engaged in a dense web of inter-party transfers.[3] Their financial transactions cannot reasonably be understood in isolation; the same body of data and activity must be reviewed across all entities. It would be both duplicative and inefficient for each Trustee to retain separate professionals to analyze the very same information when the estates are aligned in their objective—namely, to determine the nature and source of the substantial funds that flowed through the Debtors and their affiliates, where those funds ultimately went, and whether those funds can be recovered.[4]

---

[3] For several examples of the inter-party transactions that have yet to be explored, see ¶ 9 of the Motion for Limited Examination of United Bankshares, Inc. Pursuant to Bankruptcy Rule 2004 filed in the Chasen Construction case at Dkt. 83.

[4] The Court previously granted Guttman's application to employ Larry Strauss, Esq., CPA & Associates, Inc. to perform a variety of accounting services including to "analyze prior financial transactions (and) assist the Trustee with avoidance actions."  See, Chasen Dkts. 41 and 63.  That Application further noted an overlap in certain financial transactions between the two cases and expressed the Trustee's contemplation

**The Bankruptcy Code Permits Joint Retention of a Non-Advocacy Professional**

6. Generally speaking, the Court may not approve the appointment of a professional who holds or represents "an interest adverse to the estate," and may only approve the appointment of a "disinterested person." 11 U.S.C. § 327(a).

7. However, there is a notable exception where the professional's sole connection is the representation of a creditor of the Bankruptcy estate. In that instance the Code provides:

> … a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c).

8. In other words, where the professional is not a "disinterested person" or where the professional possesses an "interest adverse to the estate" solely because of employment by or representation of a creditor of the Bankruptcy estate, § 327(c) permits the Court to exercise its discretion over the professional's employment. Nevertheless, where there is an actual conflict of interest arising from the professional's employment by or representation of a creditor, the Court must deny the application of employment.

9. In the instant cases and in the context of the employment of SC&H, there exists only the potential for a possible conflict which exists with respect to the employment of non-attorney professionals whenever two or more related companies find themselves

---

that he and Schlossberg would exchange information and consult with each other and each other's professionals, as appropriate.  Since employing Strauss, Guttman has become aware that the overlap is even more extensive than originally understood and that reliance on the data being compiled and analyzed by SC&H will be both substantial and indispensable to the effective administration of this estate.

Although SC&H's involvement will lessen the need to have Strauss provide forensic services, it will not eliminate it. To the contrary, Strauss' role is tailored to ensure that his services are confined to matters uniquely affecting the individual Chasen estate, or, where there is overlap, to assist Guttman in distilling the SC&H data to its impact on that estate. In this way, the engagement not only avoids redundancy but also promotes efficiency by leveraging common data while ensuring that Guttman receives the case-specific financial advice required.

involved in some fashion in bankruptcy proceedings. In the cases at bar, however, as with many such similar situations, the likelihood for a potential conflict to ripen into an actual conflict is remote and is not disabling with respect to the pending Application. That conclusion is based upon multiple factors as hereinafter set forth.

10. First, the purpose of SC&H's engagement is to analyze and unravel extensive and complex financial transactions that took place over a period of years. SC&H has no "dog in the fight" other than to share the results of its review with the Trustees. Unlike debtor's counsel, or accountants providing other services, in these cases SC&H has no role as an advocate. This is akin to the employment by multiple related entities of a public accountant in which instance the court observed:

> … the function of Arthur Andersen as a public accountant permits dual employment by the estates because the function is one of reporting rather than one of advocacy… The assisting of the debtors in preparing the required bankruptcy reports is likewise distinguished from advocacy. There is no reason why these accounting functions, even though representative of the debtors, need to entail adverse representation. The unsecured creditors committee of Diamond Lumber has objected to Arthur Andersen's employment by more than one of the estates, but under the circumstances the court sees no reason to believe that an adverse situation is created solely by the fact of dual employment.

*In re Michigan General Corp.,* 77 B.R. 97, 108 (Bkrtcy.N.D.Tex.,1987).

11. Second, at this point in time the interests of the two Estates are perfectly aligned. Where did the money come from and where did the money go? Should the answers to those questions give rise to an actual conflict, the Trustees and SC&H are duty-bound to report such conflict to the Court and perhaps make other arrangements. That day has not yet come.

12. Third, SC&H is not calling the shots in either of these cases. Separate independent trustees have been appointed in each of the cases and each of the trustees

has hired separate independent counsel. This addresses the policy reason described by the bankruptcy court in *In re McKinney Ranch Associates*:

> Strong policy reasons support the prohibition of the simultaneous representation of potential conflicts by counsel for a trustee or a debtor in possession. It is the duty of counsel for the debtor in possession to survey the landscape in search of property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate. The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict: Any potential conflict of interest represents a potential to overlook an asset or defense of the estate. Thus a potential conflict of interest, while it may be otherwise ethically proper, is not normally permitted under section 327.
>
> Not all potential conflicts result in disqualification of counsel for a debtor under section 327. Collier states:
>
>> [The rule] appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code ... Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties.
>
> 2 Collier on Bankruptcy, ¶ 327.03, pp. 327–19–20 (15th ed. 1986). This formulation is too broad.
>
> The policy behind disqualification for representing potentially conflicting interests provides the key to its extent. The jaundiced eye and scowling mien of counsel for the debtor should fall upon all who have done business with the debtor recently enough to be potential targets for the recovery of assets of the estate. The representation of any such party disqualifies counsel from representing a debtor. Any more remote potential conflict should not result in disqualification.

*In re McKinney Ranch Associates*, 62 B.R. 249, 254–55 (Bkrtcy. C.D. Cal.,1986).

The *McKinney* Court further elaborated in footnote 7 as follows:

> This disqualification applies only to general counsel for a debtor. Special counsel, employed for a limited purpose, are subject to the much narrower rule of Bankruptcy Code § 327(e), which permits such representation where the scope of the representation presents

> no actual conflict. … In addition, there is a much narrower standard for disqualification for an attorney who represents a creditor in a Chapter 7 or Chapter 11 case. Section 327(c) authorizes such an attorney to represent the debtor, unless another creditor objects, in which case employment must be disapproved if there is an actual conflict of interest (citations omitted).

Id at n.7.

13. Sharing a forensic accountant is unlike and does not raise the concerns of related estates sharing counsel in which the very professional who identifies an issue must also decides what to do about it.

14. For these reasons the Trustee submits that employment of SC&H is allowable under 11 U.S.C. § 327(c).

15. The *curriculum vitae* of Mr. Patrick attached hereto as Exhibit 1 is illustrative of the experience of Mr. Patrick and SC&H and reveals them to be uniquely well qualified to take on and discharge the important responsibilities of the financial advisors sought to be employed by the Trustee in the instant case.

16. Schlossberg has previously undertaken to negotiate the proposed terms and conditions of employment of SC&H and a copy of those proposed terms and conditions is forth in the Engagement Agreement attached to his Application as Exhibit 2 attached thereto. Trustee Guttman has entered into a similar Agreement with SC&H but excluding services unique to Chapter 11 and tax work. See Exhibit 2 attached hereto. See footnote 4, *supra*.

17. As of the date hereof, the hourly rates of compensation of persons employed by SC&H and contemplated to provide services to the Trustee are as follows:

| Position | Hourly Rate |
|---|---|
| Managing Director/Principal | $525 - $625 |
| Senior Manager/Manager | $375 - $450 |
| Senior Consultant/Staff | $300 - $325 |

18. It is the contemplation of the parties that from and after the date of the Court's approval of SC&H's employment by Guttman, SC&H's fees and expenses will be split 50 - 50 between the two estates unless there is a task that is for the benefit of only one of the two estates. If one of the two estates is administratively insolvent, the other estate shall pay the portion of SC&H's fees and expenses that is not paid by the administratively insolvent estate. If both of the estates are administratively insolvent, 50% of SC&H's fees and expenses shall be a claim against each estate.

19. Furthermore, the Trustees and SC&H acknowledge and understand that they must constantly monitor the dual representation for any indication of an actual conflict. In the event of an actual conflict that can be resolved by SC&H serving only one of the trustees, that Trustee shall be Schlossberg. In the event of an actual conflict that can only be resolved by serving neither Trustee, SC&H shall cease its representation of either Trustee. In any of such events, the parties shall promptly inform the Court and the Office of the United States Trustee of the conflict and proposed resolution.

20. Finally, the parties note that they are operating under a common interest understanding and that all documents, communication, and disclosures by and among the Trustees and their professionals, including SC&H, do not constitute a waiver of the attorney-client privilege, the work product privilege, the joint defense privilege, or any other privilege or immunity available to them.

21. By virtue of the attached Declaration in Support of Application of Trustee for Authority to Employ Financial Advisors executed by Mr. Patrick, (Exhibit 3) the Trustee is informed and believes that both Mr. Patrick and SC&H are eligible to serve as the Trustee's forensic accountants within the contemplation of 11 U.S.C. § 327(a) and (c).

22. Notice of this Application has been provided to the parties requesting notice in this case and the United States Trustee. The Trustee submits that such notice is appropriate and adequate under the circumstances.

**WHEREFORE**, for these reasons, the Trustee respectfully requests that he be authorized to retain and employ Robert Patrick and SC&H to represent him as financial

advisors in these proceedings, and that he be granted such other and further relief as the Court deems proper.

                Respectfully submitted,

                <u>/s/ Zvi Guttman</u>
                Zvi Guttman, Trustee
                c/o The Law Offices of Zvi Guttman, P.A.
                Post Office Box 32308
                Baltimore, Maryland 21282
                (410) 580-0500 Phone
                (410) 580-0700 Fax
                <u>Zvi@zviguttman.com</u>