**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

**In re:**

**Brandon M. Chasen, Sr.,**

**Debtor.**

**Chapter 7**

**Case No. 25-15437-NVA**

**FAMILY PENSION CORP. 401K PLAN**
5825 Windsor Court
Boca Raton, Florida 33496

-and-

**JONATHAN HONIG**, in his capacity as co-Trustee of and for the **RENEE HONIG 2019 IRREV TRUST AGREEMENT U/A DTD 07/09/2019**
5825 Windsor Court
Boca Raton, Florida 33496

-and-

**FOUR KIDS INVESTMENT FUND, LLC**
5825 Windsor Court
Boca Raton, Florida 33496

**Plaintiffs,**

**v.**

**Brandon M. Chasen, Sr.**
1501 Yamato Road, #3007
Boca Raton, Florida 33431

**Defendant.**

**Adv. Proc. No.: _______________**

## COMPLAINT FOR MONEY JUDGMENT, TO DETERMINE DISCHARGEABILITY OF DEBT AND OBJECTION TO DISCHARGE

Family Pension Corp. 401k Plan ("Family Pension"), Four Kids Investment Fund, LLC ("Four Kids"), Jonathan Honig, as co-Trustee (the "Trustee") by and for the Renee Honig 2019 Irrevocable Trust Agreement U/A DTD 07/09/2019 (the "Trust", and collectively with Family Pension, Four Kids and the Trustee, "Plaintiffs"), by and through their undersigned counsel, Ice Miller LLP, file this Complaint for Money Judgment, to Determine Dischargeability of Debt and Objection to Discharge (the "Complaint") against Mr. Brandon M. Chasen, Sr. ("Chasen" or the "Debtor") and aver as follows:

## I. INTRODUCTION

1. This action arises out of a fraudulent scheme orchestrated by Chasen and Paul Davis ("Davis") who, with and through their real estate business, the Chasen Companies ("Chasen Companies" or the "Company"),[1] siphoned tens of millions of dollars from lenders and investors, including at least $35 million from Plaintiffs. Although once lauded as one of the fastest-growing companies in the country for developing boutique apartment buildings and overhauling historic properties in the Baltimore area, the Company's success was built on a foundation of fraud -- a carefully orchestrated scheme of fraudulent misrepresentations and omissions, facilitated by numerous parties, including Defendant.

2. Chasen Companies funded the acquisition and development of each project through loans obtained by the specific special purpose entity that owned the underlying real property. Additional capital required for the development of the projects was raised through the issuance of promissory notes by Chasen Acquisitions LLC ("Chasen Acquisitions"), a separate special

[1] On information and belief, Chasen Companies operated through a series of affiliated entities. "Chasen Companies" or "the Company," as used herein, refers to all such entities, including "Chasen Acquisitions LLC" and "Chasen Construction LLC."

purpose entity not tied to any specific development project. Those promissory notes were marketed to lenders, including Plaintiffs, as low-risk, high-yield debt instruments, personally guaranteed by Chasen and Davis, to fund specific projects under development by the Company. To provide additional protection for the loans, Chasen and Davis purportedly offered membership interests in and pledges of certain other assets owned by the relevant property ownership entities in the Chasen Companies portfolio.

3. In reality, Chasen Acquisitions was a sham entity that owned no assets and had no interest in the respective development properties that purportedly supported each issued promissory note. Rather than serving as a traditional mezzanine financing vehicle, Chasen Acquisitions was created to conceal the Company's supplemental capital raises from its senior property-level lenders, evade covenants, representations, and warranties in the governing loan documents and related agreements, and provide Chasen and Davis access to excess cash outside of the specific development project entities for their personal benefit.

4. Contrary to the Company's representations and unknown to its investors and lenders, including Plaintiffs, this structure allowed the Company to use the proceeds to repay loans made by other investors on unrelated Chasen Companies properties; pay expenses for unrelated Chasen Companies properties; inflate financial statements of other Company entities to satisfy lending covenants; and finance Chasen and Davis's lavish lifestyle of private jets, luxury automobiles, jewelry, exotic vacations, multiple residences and private yachts.

5. For years, Chasen and Davis used this fraudulent scheme to induce Plaintiffs to invest more than $70 million in the Company's development projects facilitated by the use of documents that, among other things, overvalued the investment properties, undervalued their

liabilities, and concealed the actual uses of the investment proceeds and the true financial health of the Company.

6. When the Company's access to cash dried up and Chasen Acquisitions defaulted on the promissory notes issued to Plaintiffs in late 2023, Chasen and Davis, with the help of others, induced Plaintiffs to amend the terms of the outstanding notes by extending the maturity dates, pledging new collateral, and transferring membership interests in specific development projects to Plaintiffs. However, these concessions were legally impermissible under then-existing governing documents with other lenders and investors, and involved collateral that had already been pledged to other investors.

7. On March 19, 2025, Chasen Construction LLC ("Chasen Construction"), the Company's construction arm, was forced into bankruptcy by several of its creditors.[2] On June 16, 2025, these same creditors forced Chasen into bankruptcy.[3] Both cases are currently pending in the U.S. Bankruptcy Court for the District of Maryland. Chasen Acquisitions, Chasen, and Davis owe more than $35 million to Plaintiffs in principal, along with a minimum of $10 million in interest and penalties.

## II. PARTIES

8. Plaintiff Family Pension Corp. 401k Plan, Family Pension, is a qualified retirement plan established by Family Pension Corp., a corporation duly organized and existing under the laws of the State of Florida with its principal place of business located in Boca Raton, Florida.

---

[2] *In re Chasen Construction LLC,* Case No. 25-12356 in the United States Bankruptcy Court for the District of Maryland (Baltimore Division).

[3] *In re Brandon Michael Chasen, Sr.*, Case No. 25-15437 in the United States Bankruptcy Court for the District of Maryland (Baltimore Division).

9. Plaintiff Four Kids Investment Fund, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located in Boca Raton, Florida.

10. Plaintiff Jonathan Honig, the Trustee of the Trust, is a citizen of the State of Florida. The Trust is a beneficiary trust duly organized and existing under the laws of the State of Florida.

11. Defendant, Chasen, is an individual who purportedly resides at 1501 Yamato Rd., # 3007, Boca Raton, FL 33431, according to a filing in his bankruptcy proceedings.

## III. JURISDICTION AND VENUE

12. Chasen is the Debtor in the above-captioned chapter 7 proceeding pending before this Court in the Baltimore Division, Case No. 25-15437.

13. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

15. This Complaint states claims that are adversary proceedings governed by Part VII of the Federal Rules of Bankruptcy Procedure under Rule 7001(a), (d), (f).

16. This adversary is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J), and this Court has constitutional authority to enter judgment; however, to the extent that it is determined that this Court cannot enter final orders or judgment consistent with Article III of the United States Constitution, absent consent of the parties, Plaintiffs consent to entry of final orders or judgment by this Court.

17. The exercise of personal jurisdiction over the Debtor by this Court is consistent with the Constitution and laws of the United States.

## IV. BACKGROUND AND FACTS

### A. Chasen Companies' Pitch to Prospective Investors

18. Chasen Companies marketed itself to investors and lenders as a real estate development company with more than 75 buildings in its portfolio worth $400 million dollars – a dominant player in Baltimore and Washington, D.C. real estate, developing boutique apartment buildings and overhauling historic properties. Between 2021 and 2022, the Company acquired 30 properties in Baltimore – largely in part to individual third-party lenders who were deceived into investing millions of dollars with the Company.

19. Upon information and belief, the capital structure of the development projects was as follows: each project was separately owned by and financed through its own limited liability company ("LLC"); each LLC entered into a senior secured acquisition and construction loan facility with a senior lender; when necessary, additional financing was procured through Chasen Acquisition, as set forth above. Separately, Chasen Companies offered investors equity in properties under construction and future projects. Investors had no liability or obligations relating to the Company's debt and no obligation to make capital contributions.

20. Chasen Acquisitions was a special purpose entity formed for the purported purpose of funneling proceeds from a centralized entity to each of its various development projects. Each loan, which often referenced a specific project, was evidenced by a promissory note and guaranteed by Chasen and Davis. The notes bore interest at above-market rates. At their inception, loans for projects that Chasen Companies scheduled to complete within a year bore a 10% fixed interest rate. Projects that Chasen Companies expected would take longer than one (1) year to complete bore a 13% fixed interest rate.

21. Chasen Companies represented to investors and lenders, including Plaintiffs, that Chasen Acquisitions would use the loan proceeds raised from Plaintiffs and other third-party investors to fulfill capital needs to complete the purchase and construction of upcoming development projects not otherwise covered by the property level funded debt. Plaintiffs relied upon these representations.

22. The term of each loan was defined by the Company's scheduled timeline to have the properties renovated and refinanced. The repayment of the debt incurred in connection with the acquisition and development of each project, including moneys loaned by Plaintiffs through Chasen Acquisition, was dependent on the Company's ability to complete and refinance each respective project.

23. However, when the Company's downfall began and refinancing proceeds diminished, the Company used funds from new investors to repay earlier investors rather than contribute to uncompleted projects as represented, to maintain the illusion of its continued success.

**B. The Reality: Chasen Companies Was A Massive Fraud**

24. The Company's refinance process was a key component of its fraudulent enterprise: it was used by the Company to illustrate to investors the reliability of its strategy and ability to repay all outstanding debt. Chasen Companies guaranteed "reliable predictions" for its future projects based on the performance of its portfolio of properties that the Company developed over seven years.

25. Absent from the Company's marketing materials, however, was the dark truth that its properties were, in reality, suffering from increased vacancies, management neglect, and misappropriation of funds—failures that Defendant knew and concealed.

26. Chasen Companies fraudulently "reverse engineered" the projected market value of a given property and the necessary refinance loan amount to guarantee that the entire capital stack, which included the third-party debt, was paid off and a minimum of 20% profit went to Chasen Companies, even when the Company knew that the value of the completed development would be worth far less than projected resulting in a substantially smaller refinance loan amount.

27. The Company's marketing materials described its monopoly-like business model in no uncertain terms: "[t]he strategy is to create a monopoly of properties in a given market for the following reasons: it allows us to know with certainty the Market Value of each development project because the comparables used by our broker, appraisers, and refinance lenders are exclusively from the buildings we own….[w]e control the macro rental pricing and supply in the market." (emphasis added).

28. In other words, Chasen Companies would purchase tightly clustered properties in high-end neighborhoods (using the same commercial mortgage broker, the same lender, and the same appraisal company) to control the macro rental pricing and market inventory. This particular approach allowed the Company to manipulate the value of its properties that were then used to create false and inflated values in appraisals for future developments – appraisals that were used to pitch opportunities to Plaintiffs and other third parties.

29. Chasen Companies further used these deceptively propped-up building appraisal values to obtain commercial loans at levels exceeding the true value of the property – with payment obligations beyond the Company's true ability to repay.

30. To investors and lenders, including Plaintiffs, Chasen Companies made it appear that the value of the completed projects would support repayment of all acquisition and development costs through refinancing. Nothing could be further from the truth. Chasen

Companies hand-fed false information about its properties to further increase their appraised value, misleading commercial lenders and individual investors alike.

**C. Plaintiffs' Loans and Chasen's Guarantees**

31. As noted above, Chasen and Davis fraudulently obtained loans from Plaintiffs for identified real estate projects.

32. The Company generally held each development property through a separate limited liability company that obtained senior acquisition and construction financing. Chasen Acquisitions raised additional capital through promissory notes associated with particular projects, although it owned no development properties and held no interest in the properties that purportedly supported those notes.

33. Chasen and Davis represented and agreed that the Plaintiffs' funds would be used for the identified projects and repaid following completion and refinancing. Rather than using the funds for their specific and agreed purpose, Chasen and Davis instead diverted proceeds to unrelated projects and personal expenditures, including, *inter alia*, yacht expenditures, jewelry, and luxury automobiles, and then obtained loan extensions without disclosing the Company's financial problems or competing claims against the promised collateral.

34. In total, Plaintiffs invested more than $70 million in the Company's development projects facilitated by the use of documents that, among other things, overvalued the investment properties, undervalued their liabilities, and concealed the actual uses of the investment proceeds and the true financial health of the Company.

35. More specifically, between approximately August 2021 and July 2023, Plaintiffs advanced at least $35,000,000.00 to Chasen Acquisitions in connection with loans on eight development properties in Baltimore, Maryland, and Tallahassee, Florida (the "Subject

Properties”). Promissory notes, guarantees and related agreements documented the loans (collectively, the “Loan Documents”).

36. The Subject Properties were known as the Plaza, the Anne, the Wyman, the Bo, the Brooks, Jackson Bluff, the Monica, and the Oz. The Loan Documents required Chasen Acquisitions to allocate the proceeds to the entity owning or acquiring the corresponding property for its acquisition or development.

37. Chasen participated directly in soliciting the loans. In late February 2022, Plaintiffs met Chasen and Davis to discuss the Company’s fundraising for its upcoming acquisition of a property located at 201 E. Baltimore Street, Baltimore, Maryland (the “Plaza”). A few days later, Plaintiffs paid $10,000,000 in connection with the Plaza loan.

38. On July 11, 2023, Chasen met with Plaintiffs and other investors to present the Jackson Bluff project. Three days afterward, Plaintiffs extended a multimillion-dollar loan for that project.

39. In soliciting the loans, Chasen and Davis represented that the proceeds would be used to acquire, construct, develop, or operate the properties identified in the Loan Documents. They described the loans as low-risk, high-yield, supported by their personal guarantees and collateral assignments of membership interests and other assets associated with the Company’s real estate portfolio. Plaintiffs relied on those representations and the promised security when advancing their funds.

**D. Diversion of Proceeds and Misleading Financial Information**

40. Chasen and Davis used Chasen Acquisitions to raise money outside the property-owning entities and conceal supplemental borrowing from senior lenders.

41. Contrary to the stated purposes of the loans, proceeds were used to repay investors in unrelated projects, cover expenses at other Company properties, and finance Chasen and Davis's personal expenditures. Funds were also used to inflate other Company entities' financial statements to satisfy lending covenants.

42. Records reviewed to date by Plaintiffs indicate that Chasen Acquisitions transferred Plaintiffs' funds to Chasen Construction, affiliated entities, and individuals, including Chasen. Those recipients then disbursed funds to other related entities and individuals. Plaintiffs have sought, and continue to seek, records explaining the basis for transfers unrelated to the designated development projects and identifying the ultimate disposition of their funds.[4]

43. For example, on or about July 19, 2022, Plaintiffs and a related entity made loans in the amount of $7,000,000 to Chasen Acquisitions for a specific real estate project. The next day, two transfers occurred: (a) Chasen Acquisitions transferred the total $7,000,000 to the property holding LLC, (b) and the property holding LLC, in turn, transferred the total $7,000,000 to Chasen Construction. Within the next two weeks, Chasen Construction transferred essentially the entire amount for unpermitted uses, including a payment to a yacht chef, for airplane expenses, millions of dollars of transfers to personal accounts held by Chasen and Davis, for other personal expenses, and to other Company investors and for expenses for other Company development projects.

44. Chasen and Davis also presented investment opportunities using documents that overstated property values and understated liabilities. Those documents concealed the actual use

[4] In this regard, Plaintiffs have sought authority to conduct Rule 2004 examinations of a number of related individuals and entities with knowledge of Chasen's misconduct. Plaintiffs expressly reserve the right to amend this Complaint with respect to additional information learned from those efforts, which are ongoing.

of investment proceeds and did not accurately disclose the Company's financial condition or its ability to obtain the refinancing proceeds on which repayment depended.

**E. Defaults and the 2024 Loan Modifications**

45. Chasen Acquisitions began defaulting on Plaintiffs' matured notes in 2023. Chasen and Davis sought additional time to repay, representing that the Company was solvent and would satisfy its obligations if Plaintiffs agreed to extensions. Negotiations continued between January and April 2024. The proposed modifications extended maturity dates and deferred interest payments. To secure Plaintiffs' agreement, Chasen and Davis offered additional membership interests and collateral supporting their personal guarantees.

46. The Company, however, could not and did not repay the loans, and interests offered as additional collateral were already encumbered.

47. On February 1, 2024, Chasen and Davis executed an Omnibus Modification and Reaffirmation of Loan Documents (the "Omnibus Modification"). Among its terms, they committed to maintain combined minimum liquidity of $5,000,000.00 and combined minimum net worth of $50,000,000.00. They separately represented that the pledged membership interests had not otherwise been pledged or encumbered. The representation concerning existing pledges and encumbrances was false, which Chasen knew at the time.

48. The Omnibus Modification also reaffirmed that loan proceeds had not been, and would not be, used for purposes other than acquiring, constructing, developing, or operating the corresponding properties. A breach constituted an event of default under the Loan Documents. This reaffirmation was also false, which Chasen knew at the time.

49. Plaintiffs did not know that the promised collateral was subject to competing assignments, that the Company was unable to meet obligations to other investors, or that its

access to refinancing was deteriorating. In reliance on the representations made in connection with the modifications, they extended repayment deadlines and refrained from exercising their available remedies. They would not have agreed to those extensions had the undisclosed facts been revealed.

50. As part of the 2024 Omnibus Modification of loan documents, Plaintiffs received several Collateral Assignments from Chasen Companies.[5] Each Collateral Assignment made the following representations:

a. That the assignment constituted a security agreement;

b. That Plaintiffs were authorized to file any and all UCC financing statements to perfect their security interest; and

c. That the assigned membership interest in the LLC, each pertaining to a real property in the Company's portfolio, was free from all liens, encumbrances, and claims, and that Chasen and Davis had good right and lawful authority to assign and grant a security interest in said LLCs.

51. Chasen knew that material terms in the Collateral Assignments were untrue. For instance, Chasen knew that senior lenders for the pledged LLCs did not allow second liens recorded on these properties.

52. Critically, Chasen also knew of a conflict that existed between Plaintiffs' investments and those of another investor. The pledged assignment of membership interest was,

[5] As outlined above, the Omnibus Modification concerned eight specific Subject Properties. An amended and restated promissory note was executed for each Loan made in connection with each property and each amended note contained a "Reaffirmation of Guaranty and Collateral Assignment," acknowledging the full force and effect of Chasen and Davis's personal guarantees and the Collateral Assignments of membership interests that were executed alongside the original notes. In addition, pursuant to the omnibus modification, Plaintiffs received *new* assignment of membership interests in return for their agreement to extend the term of the promissory note for The Monica. This new assignment included dozens of additional LLCs that were not originally assigned during the initial issuance of the notes, inducing Plaintiffs to extend the terms of their notes in return for this additional collateral.

in fact, encumbered and already pledged to another investor. And, that other investor had, just weeks before, provided a notice of default on the very same properties whose membership interests were being newly pledged to Plaintiffs.

**F. Bankruptcy Proceedings and Failure to Preserve Records**

53. Creditors commenced an involuntary Chapter 11 case against Chasen Construction on March 19, 2025. An involuntary Chapter 7 case against Chasen followed on June 16, 2025.

54. Plaintiffs' loans remain unpaid.

55. To trace their funds and investigate transactions involving Chasen and the Company, Plaintiffs have pursued bank records and communications concerning nearly 110 accounts maintained at United Bank for Chasen, the Company, and related entities or individuals.

56. Moreover, Chasen has admitted, during testimony under oath, that he deleted his email account with the Chasen Companies as his web of lies unraveled. As a result, Plaintiffs have sought communications and transaction records from third parties to investigate his financial affairs and the transactions alleged herein. The circumstances of the deletion, his failure to preserve historical communications, and the resulting gaps in available records are addressed more specifically in the allegations supporting Plaintiffs' objection to discharge.

**COUNT I**
**FRAUD**

57. Plaintiffs hereby re-allege and incorporate by reference all allegations contained in paragraphs 1-56 as if fully set forth herein.

58. In soliciting Plaintiffs' loans for the Subject Properties, including during the late-February 2022 discussions concerning the Plaza loan and the July 11, 2023 presentation

concerning Jackson Bluff, Chasen represented that Plaintiffs' funds would be used to acquire, construct, develop, or operate the properties identified in the Loan Documents.

59. Those representations were false because Chasen intended to, and in fact did, divert proceeds to purposes other than the designated projects. As alleged above, Chasen used Chasen Acquisitions to obtain funds outside the property-owning entities and diverted proceeds to repay unrelated investors, pay expenses of unrelated properties, and fund lavish personal expenditures.

60. In connection with the Loans, Chasen also made additional false statements and representations, including, *inter alia*, overvaluing the investment properties, undervalued the Company's liabilities, concealing the actual uses of the investment proceeds, concealing the true financial health of the Company, and making false representations and warranties in the Loan Documents, including in the Omnibus Modification and the Collateral Assignments, among others.

61. Chasen knew that these representations and statements were false and made them to deceive Plaintiffs and induce them to advance their funds.

62. The representations, warranties and statements made by Chasen were material to Plaintiffs' lending decisions.

63. To induce Plaintiffs to modify and extend the outstanding loans, Chasen executed the February 1, 2024 Omnibus Modification, representing that the pledged membership interests had not otherwise been pledged or encumbered and reaffirming that the loan proceeds had been used only for the designated properties.

64. Chasen also made or caused to be made the representations in the Collateral Assignments delivered in connection with the April 12, 2024 closing that the assigned

membership interests were free from liens, encumbrances, and claims and could lawfully be pledged to Plaintiffs.

65. These representations were materially false. Loan proceeds had been diverted to unrelated purposes, and certain membership interests offered as collateral had already been pledged to another investor.

66. Plaintiffs justifiably relied on the representations by agreeing to the modifications, extending repayment deadlines, and refraining from exercising their available contractual remedies. Plaintiffs did not know the true facts and would not have agreed to the extensions had those facts been disclosed.

67. Plaintiffs justifiably relied on Chasen's warranties, representations and statements, which were consistent with the project-specific restrictions in the Loan Documents, and advanced funds in reliance on them. Plaintiffs would not have made the affected loans had they known Chasen's intended uses of the proceeds.

68. As a direct and proximate result of Chasen's fraud, Plaintiffs suffered damages, including unrepaid principal attributable to the fraudulently obtained loans, in an amount to be determined at trial. Chasen is personally liable for damages caused by his own fraudulent conduct. Plaintiffs seek compensatory damages, punitive damages based on Chasen's actual knowledge and intent to deceive, and interest and costs to the extent permitted by law.

## COUNT II
## FRAUDULENT INDUCEMENT

69. Plaintiffs hereby re-allege and incorporate by reference all allegations contained in paragraphs 1-68 as if fully set forth herein.

70. In soliciting Plaintiffs' loans for the Subject Properties and inducing them to enter into the transactions, including during the late-February 2022 discussions concerning the Plaza

loan and the July 11, 2023 presentation concerning Jackson Bluff, Chasen represented that Plaintiffs' funds would be used to acquire, construct, develop, or operate the properties identified in the Loan Documents.

71. Those representations were false because Chasen intended to, and in fact did, divert proceeds to purposes other than the designated projects. As alleged above, Chasen used Chasen Acquisitions to obtain funds outside the property-owning entities and diverted proceeds to repay unrelated investors, pay expenses of unrelated properties, and fund lavish personal expenditures.

72. In connection with the Loans, Chasen also made additional false statements and representations, including, *inter alia*, overvaluing the investment properties, undervalued the Company's liabilities, concealing the actual uses of the investment proceeds, concealing the true financial health of the Company, and making false representations and warranties in the Loan Documents, including in the Omnibus Modification and the Collateral Assignments, among others.

73. Chasen knew that these representations and statements were false and made them to deceive Plaintiffs and induce them to advance their funds.

74. The representations, warranties and statements made by Chasen were material to Plaintiffs' lending decisions.

75. Plaintiffs justifiably relied on Chasen's warranties, representations and statements, which were consistent with the project-specific restrictions in the Loan Documents, and advanced funds in reliance on them. Plaintiffs would not have made the affected loans had they known Chasen's intended uses of the proceeds.

76. To induce Plaintiffs to modify and extend the outstanding loans, Chasen executed the February 1, 2024 Omnibus Modification, representing that the pledged membership interests had not otherwise been pledged or encumbered and reaffirming that the loan proceeds had been used only for the designated properties.

77. Chasen also made or caused to be made the representations in the Collateral Assignments delivered in connection with the April 12, 2024 closing that the assigned membership interests were free from liens, encumbrances, and claims and could lawfully be pledged to Plaintiffs.

78. These representations were materially false. Loan proceeds had been diverted to unrelated purposes, and certain membership interests offered as collateral had already been pledged to another investor.

79. Plaintiffs justifiably relied on the representations by agreeing to the modifications, extending repayment deadlines, and refraining from exercising their available contractual remedies. Plaintiffs did not know the true facts and would not have agreed to the extensions had those facts been disclosed.

80. Chasen's misrepresentations directly and proximately caused Plaintiffs to enter into the Loans, including the modifications, on materially misrepresented terms and suffer resulting pecuniary losses, including losses attributable to making the Loans in the first instance, as well as losses related to their postponed enforcement and the undisclosed competing claims against the promised collateral. Plaintiffs seek compensatory damages in an amount to be determined at trial, punitive damages based on Chasen's actual knowledge and intent to deceive, and interest and costs to the extent permitted by law, without duplicative recovery.

**COUNT III**
**CONVERSION**

81. Plaintiffs hereby re-allege and incorporate by reference the factual allegations contained in paragraphs 1–80 as if fully set forth herein.

82. Chasen personally solicited the advances from Plaintiffs in the amount of $35,000,000.00, which represented the Plaintiffs' personal property. He did so under the representation that the money would fund specifically enumerated and agreed projects.

83. Chasen exercised control over the disposition of Plaintiffs' advances through Chasen Acquisitions and the Company's affiliated entities. Records show transfers from Chasen Acquisitions to Chasen Construction, other affiliated entities, and individuals, including Chasen, followed by further disbursements among related entities and individuals. Chasen intentionally directed the unauthorized disposition described above. Loan proceeds were diverted to repay investors in unrelated projects, cover expenses at other Company properties, and finance his own personal expenditures instead of funding the designated projects.

84. Plaintiffs did not authorize Chasen to appropriate those funds for his personal benefit or to satisfy obligations unrelated to the designated project.

85. Chasen knew the limits of the authorized use and has no justification for the misapplication of these funds. He had represented when soliciting the loans that the proceeds would fund the identified properties. In the February 1, 2024, Omnibus Modification, he reaffirmed that proceeds had not been, and would not be, used for unrelated purposes, although he knew that proceeds had been diverted.

86. As a direct and proximate result, Plaintiffs suffered damages equal to the value of the funds converted, together with additional recoverable losses, in an amount to be determined at trial. Plaintiffs do not seek duplicative recovery for the same loss under their other claims.

**COUNT IV**
**NONDISCHARGEABILITY—11 U.S.C. § 523(a)(2)(A)**
**(FALSE PRETENSES, FALSE REPRESENTATION, OR ACTUAL FRAUD)**

87. Plaintiffs hereby re-allege and incorporate by reference all allegations contained in paragraphs 1-86 above as if fully set forth herein.

88. As alleged above, Chasen is liable to Plaintiffs on account of (a) his own fraudulent conduct; and (b) the fraudulent conduct of Chasen Acquisitions, for which he should be held personally liable. The actual fraud that gives rise to Chasen's liability to the Plaintiffs renders that same liability nondischargeable.

89. As described above, Chasen knowingly made material representations to the Plaintiffs and/or omitted material facts related to the Plaintiffs' loans to the Chasen Companies. Specifically, Chasen represented that Plaintiffs' funds would be used to acquire, construct, develop or operate the properties identified in the Loan Documents.

90. Chasen knew at the time those representations and omissions were made that they were false, or that they were made with gross recklessness as to their truth.

91. Those representations were false because Chasen intended to, and in fact did, divert proceeds to purposes other than the designated projects. As alleged above, Chasen used Chasen Acquisitions to obtain funds outside the property-owning entities and diverted proceeds to repay unrelated investors, pay expenses of unrelated properties, and fund lavish personal expenditures.

92. In connection with the Loans, Chasen also made additional false statements and representations, including, *inter alia*, overvaluing the investment properties, undervalued the Company's liabilities, concealing the actual uses of the investment proceeds, concealing the true financial health of the Company, and making false representations and warranties in the Loan

Documents, including in the Omnibus Modification and the Collateral Assignments, among others.

93. Chasen knew these representations and statements were false and made them to deceive Plaintiffs.

94. The Plaintiffs justifiably relied on Chasen's representations and omissions. Chasen executed the February 1, 2024 Omnibus Modification, representing that the pledged membership interests had not otherwise been pledged or encumbered and reaffirming that the loan proceeds had been used only for the designated properties. Plaintiffs did not know the true facts and would not have agreed to the loans or extensions had those facts been disclosed.

95. Chasen's false statements and representations proximately caused Plaintiffs to suffer damages, including but not limited to the funds paid to Chasen Acquisitions and Chasen.

96. As a result, Chasen's liability to Plaintiffs for his fraudulent conduct, in the full amount of the debt owed by Chasen and Chasen Acquisitions to Plaintiffs on the Contract, in the amount of $35,000,000.00, plus further damages that Plaintiffs continue to incur as they continue to work to cure Chasen's breaches and bad acts, plus attorney's fees, plus exemplary damages, including but not limited to reasonable attorney's fees, plus pre- and post-judgment interest at the maximum rate allowed by law and/or provided for under the Contract, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT V
## NONDISCHARGEABILITY—11 U.S.C. § 523(a)(2)(B)
## (MATERIALLY FALSE WRITTEN STATEMENTS RESPECTING FINANCIAL CONDITION)

97. Plaintiffs hereby re-allege and incorporate by reference all allegations contained in paragraphs 1-96 above as if fully set forth herein. To the extent this Count concerns the same representations alleged in Count I, Plaintiffs plead this Count in the alternative.

98. In connection with the debts owed, making of the loans, modification, and extension of the Plaintiffs' outstanding loans to Chasen and/or Chasen Acquisitions, Chasen made, published, or caused to be made or published materially false written representations, including, *inter alia*, overvalued the investment properties, undervalued the Company's liabilities, concealed the actual uses of the investment proceeds, concealed the true financial health of the Company, made false representations and warranties in the Loan Documents, including in the Omnibus Modification and Reaffirmation of Loan Documents dated February 1, 2024, and the Collateral Assignments delivered to Plaintiffs in connection with the April 12, 2024 closing, among others.

99. These false and misleading statements concerned Debtor's financial condition. Among other things, those representations concerned the availability of Debtor's assets to satisfy his obligations to Plaintiffs and the security supporting repayment of their loans.

100. Moreover, Debtor knew that statements, representations and warranties concerning the absence of competing claims were materially false and Debtor caused them to be made or published with the intent to deceive Plaintiffs and induce them to extend the loans and/or forbear on collection efforts.

101. Plaintiffs reasonably relied on these misrepresentations and false statements in making their decision as to enter into the underlying Loans with Chasen, as well as in connection with modifications of the Loans.

102. Through the false and misleading statements, Debtor obtained extensions of credit from Plaintiffs for obligations that he had personally guaranteed and reaffirmed in connection with the amended notes.

103. As a direct and proximate result of their reliance, Plaintiffs extended the repayment deadlines rather than exercising their available collection remedies and suffered losses arising from the continued nonpayment of those obligations.

104. Accordingly, Debtor's indebtedness to Plaintiffs arises from the extensions of credit obtained through their many false and misleading statements. That indebtedness, in an amount to be determined at trial, together with associated interest, attorneys' fees, costs, and other amounts recoverable under the applicable promissory notes, guarantees, reaffirmations, and governing law, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

**COUNT VI**
**NONDISCHARGEABILITY—11 U.S.C. § 523(a)(6)**
**(WILLFUL AND MALICIOUS INJURY)**

105. Plaintiffs hereby re-allege and incorporate by reference all allegations contained in paragraphs 1-104 above as if fully set forth herein.

106. Debtor willfully and maliciously injured Plaintiffs by virtue of his fraudulent conduct as alleged above.

107. By obtaining funds from Plaintiffs through his various misrepresentations and fraud, and by inducing them to extend repayment deadlines through false representations concerning the collateral supporting their loans, Chasen deliberately and intentionally injured Plaintiffs. Chasen knew that the representations concerning the absence of competing claims were false and that Plaintiffs would not have agreed to the extensions had they known the true facts. His actions were specifically intended to deceive Plaintiffs and obtain financial advantage at their expense.

108. Chasen's conduct was malicious because he consciously disregarded his obligations under the loan agreements and his personal guarantees, diverted Plaintiffs' funds to

unauthorized uses, and made false representations to obtain extensions while knowing that the promised collateral was subject to competing claims. Defendant proceeded with the April 2024 transaction despite express and direct knowledge that the proposed assignments contained an untrue representation concerning existing pledges.

109. By virtue of Defendant's willful and malicious conduct, Plaintiffs postponed enforcement of their repayment rights and accepted collateral subject to undisclosed competing claims, thereby suffering damages. Defendant is personally liable for the damages directly and proximately caused by his own intentional tortious conduct.

110. As a result, Chasen's liability to Plaintiffs for his willful and malicious conduct, in the full amount of the debt owed by Chasen to Plaintiffs in the amount of $35,000,000.00, plus further damages that Plaintiffs continue to incur, plus attorney's fees, plus exemplary damages, plus pre- and post-judgment interest at the maximum rate allowed by law, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

## COUNT VII
## OBJECTION TO DISCHARGE—11 U.S.C. § 727(a)(3)
## (DESTRUCTION OR FAILURE TO PRESERVE RECORDED INFORMATION)

111. Plaintiffs hereby re-allege and incorporate by reference all allegations contained in paragraphs 1-110 above as if fully set forth herein.

112. Chasen destroyed or failed to preserve recorded information from which his financial condition or business transactions might be ascertained, without justification under the circumstances, within the meaning of 11 U.S.C. § 727(a)(3).

113. At a September 15, 2025 meeting of creditors, Chasen testified under oath that, before establishing a new personal email account in 2025, he used Brandon@ChasenCompanies.com for his email communications.

114. At that same meeting, Chasen testified under oath that on February 19, 2025, he deleted his email account at the Chasen Companies, which was on the eve of the commencement of bankruptcy proceedings.

115. Upon information and belief, Chasen's historical email account contained communications concerning the loans he personally guaranteed, his interests in affiliated entities, and transactions affecting his assets and liabilities. Those communications constitute recorded information from which his financial condition and business transactions might be ascertained. Deleting the account without preserving an accessible archive left material gaps in the records available to determine Chasen's financial condition and trace the transactions alleged herein.

116. Chasen's failure to preserve those communications was not justified under the circumstances.

117. Accordingly, Plaintiffs request entry of judgment denying Chasen a discharge pursuant to 11 U.S.C. § 727(a)(3).

## COUNT VIII
## OBJECTION TO DISCHARGE—11 U.S.C. § 727(a)(4)(C)
## (KNOWING AND FRAUDULENT OFFER OF PROPERTY OR ADVANTAGE FOR FORBEARANCE)

118. Plaintiffs hereby re-allege and incorporate by reference all allegations contained in paragraphs 1-117 as if fully set forth herein.

119. Chasen's conduct alleged herein constitutes the knowing and fraudulent offer of property or advantage for action or forbearance in connection with this case.

120. Through February 1, 2024, Omnibus Modification and the Collateral Assignments delivered on April 12, 2024, Chasen offered additional collateral to induce Plaintiffs to extend repayment deadlines and refrain from exercising their available remedies. Chasen knew at that

time of making them that the representations concerning the absence of competing claims were false.

121. Chasen intended to induce Plaintiffs' forbearance through those false representations. Plaintiffs relied on the representations and postponed enforcement, thereby providing Chasen with the financial advantage of delayed repayment and enforcement of his personal guarantees.

122. Those obligations remain unpaid and form the basis of Plaintiffs' claims in this proceeding.

123. Accordingly, Plaintiffs request entry of judgment denying Chasen a discharge pursuant to 11 U.S.C. § 727 (a)(4)(C).

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment in their favor and against Debtor, Chasen, for the following relief:

1. On Counts I, II, and III, for a money judgment against Chasen for the indebtedness and damages alleged herein in an amount not less than $35,000,000.00, together with additional damages, exemplary damages, attorneys' fees, costs, and pre and post judgment interest recoverable under the applicable agreements and governing law, without duplicative recovery;
2. On Counts I and II, awarding punitive damages based on Chasen's actual knowledge of the falsity of his representations and intent to deceive, to the extent permitted by applicable law;
3. On Count IV, determining that the debts owed by Chasen to Plaintiffs, as described therein, are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

4. On Count V, determining that the debts owed by Chasen to Plaintiffs arising from the extensions of credit obtained through the false and misleading statements, as described therein and pleaded in the alternative where applicable, are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B);

5. On Count VI, determining that the debts owed by Chasen to Plaintiffs arising from his willful and malicious conduct, as described therein, are nondischargeable pursuant to 11 U.S.C. § 523(a)(6);

6. On Count VII, denying Chasen a discharge pursuant to 11 U.S.C. § 727(a)(3);

7. On Count VIII, denying Chasen a discharge pursuant to 11 U.S.C. § 727(a)(4)(C);

8. For all pre- and post-judgment interest at the maximum rate to which Plaintiffs are entitled under the applicable agreements and governing law;

9. For all reasonable attorneys' fees and costs to which Plaintiffs are entitled under the applicable agreements and governing law; and

10. For such other and further relief as the Court deems just and proper.

Dated: October 30, 2026

Respectfully submitted,

*Aaron L. Casagrande*

Aaron L. Casagrande (Bar No. 28518)
ICE MILLER LLP
100 Light Street, Suite 2700
Baltimore, Maryland 21202
Phone: (410) 951-5874
Aaron.Casagrande@IceMiller.com

*Counsel for Plaintiffs*